## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LINDA D. HISLE, )<br>)<br>                     Plaintiff, )<br>     vs. )<br>)<br>JO ANNE B. BARNHART, Commissioner )<br> of the Social Security Administration, )<br>)<br>                     Defendant. ) | 1:05-cv-1125-SEB-VSS |

### Entry Discussing Complaint for Judicial Review

Linda D. Hisle ("Hisle") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. BACKGROUND

Hisle filed applications for SSI and DIB on November 26, 2001, alleging an onset date of disability of July 25, 2001. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on August 25, 2004. Hisle was present, accompanied by her attorney.  Medical and other records were introduced into evidence, and Hisle, a medical expert ("ME"), and a vocational expert ("VE") testified at the hearing. The ALJ issued a decision on February 18, 2005, denying benefits.  On May 27, 2005, the Appeals Council denied Hisle's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Hisle met the non-disability requirements set forth in the Act and was insured for benefits through June 30, 2004; (2) Hisle had not engaged in substantial gainful activity since the alleged onset of disability; (3) Hisle's non-insulin dependent diabetes, fibromyalgia, mild stenosis and arthritis were considered "severe" based on the requirements of the regulations; (4) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Hisle's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision; (6) Hisle had the residual functional capacity ("RFC") to lift or carry ten pounds frequently, lift or carry twenty pounds occasionally, stand and walk, off and on, for six hours during an eight hour workday, intermittent sitting, use hands and arms for grasping, holding and turning objects, no more than occasional squatting, kneeling, stooping, bending, crawling, in an environment relatively free of extremes of temperature and humidity, with an additional unscheduled 5 minute break per day; (7) Hisle was unable to perform any of her past relevant work; (8) Hisle was a younger individual between the ages of 45 and 49, she had a high school (or high school equivalent) education, and she had transferable skills from semi-skilled work previously performed as described in the body of the decision; (9) Hisle had the RFC to perform a significant range of light work; and (10) although Hisle's exertional limitations did not allow her to perform the full range of light work, using applicable rules and regulations as a framework for decision-making, there were a significant number of jobs in the national economy which she could perform, including shipping/receiving clerk (3,300 jobs), stock/inventory clerk (4,000), general office clerk (6,000 jobs), and assembly work (45,000), and at the sedentary level of exertion she could perform the jobs of cashier (24,000), receptionist (14,000), and assembler (10,000).  With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Hisle was not under a "disabilty" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.    Analysis

The ALJ found that Hisle had "severe" impairments of non-insulin dependent diabetes, fibromyalgia, mild stenosis and arthritis. (R. at 22). The ALJ determined that although Hisle could not perform her past relevant work, she had the RFC to perform a number of light and sedentary jobs which existed in the national economy. (R. at 23).

Hisle argues that the ALJ erred at step four by failing to properly evaluate the opinion of psychologist Dr. McIntosh and by improperly evaluating her credibility. The ALJ discussed Dr. McIntosh's opinion as follows:

> The claimant was evaluated on October 30, 2002, by David E. McIntosh, Ph.D., a consultative psychologist.  She was alleging disability due to arthritis, neck and back pain, carpal tunnel, phobias and anxiety. She denied any history of psychiatric hospitalizations. During mental status examination, she was able to remember 4 words after five minutes. She was able to repeat 3 digits. She performed two of three simple calculations.  She was unable to count serial sevens from 100.  Dr. McIntosh reported she had moderate levels of depression but she denied any suicidal ideation. She described feelings of hopelessness and despair related to her medical problems. She also had moderate levels of anxiety.  She stated she often stayed home to avoid harm.  Her mental trend and thought content were considered usual, appropriate to response and consistent with content. She   denied experiencing delusions and hallucinations. She reported she was able to dress and bathe herself and perform most cleaning tasks as needed. She

reported she displayed some hesitation and anxiety when completing daily activities due to social anxiety and fear of harm. She reported no memory problems.  She stated she struggled to complete tasks due to her desire to avoid situations that may provoke anxiety.  Dr. McIntosh's diagnoses were generalized anxiety disorder, dysthymic disorder, r/o agoraphobia without history of panic disorder.  He estimated her GAF as 55.  He concluded she had good understanding related to work-related activities but would have difficulties with persistence and sustainability on work-related activities.  He reported her physical problems and anxiety would make it difficult for her to concentrate on work-related activities.  He reported she would need frequent breaks, a reduced workday, flexibility to attend doctor's appointments and environmental accommodations (e.g., a solitary work space where she would not be obligated to interact frequently with others) for her to succeed within the work setting. (E.x. 1F/20).

While I accept that the claimant has a mental impairment, I cannot accept Dr. McIntosh's conclusions regarding her functional limitations.  He bases his conclusions, in part, on her physical impairments, which is outside his area of expertise.  He is not a medical doctor and his opinion conflicts with her treating physician's opinion.  Dr. Tung V. Nguyen reported on February 27, 2002, that although she had moderate restrictions, she was able to perform most activities of daily living or occupations. (Ex. 1F/124).  He reported on May 6, 2002 that she was able to work with restrictions of lifting less than 15 pounds.  (Ex. 1F/116).  As noted below, she was able to complete her vocational rehabilitation internship and actively participate in efforts to find employment.  Accordingly, I cannot give Dr. McIntosh's medical source statement controlling weight.

(R. at 14-15).

The ALJ noted, also, that the state agency psychologist concluded that Hisle's mental condition did not result in a marked limitation in any area of functioning and that she did not have a "severe" mental impairment. (R. at 15, 163-177). The ALJ adopted the state agency determination in that regard.  (R. at 15). The ALJ further determined that Hisle's allegations regarding depression, headaches, carpal tunnel syndrome, hearing loss and swelling, individually and in combination, were not reasonably consistent with the evidence of record, and that those impairments did not have more than a minimal effect on her ability to perform basic work activities, and were, therefore, not severe. *Id.*

Dr. McIntosh opined that Hisle would have difficulties with persistence and sustainability on work-related activities because her physical problems and anxiety would make it difficult for her to concentrate. (R. at 182).  He further opined that she would need frequent breaks, reduced workday, flexibility to attend doctor appointments, and work that required little or no interaction with others. *Id.* The ALJ did not give Dr. McIntosh's opinions controlling weight because to the extent they were based on physical impairments, they

4

were outside his area of expertise. (R. at 14). The ALJ also discredited Dr. McIntosh's opinions because they conflicted with that of her treating physician and because Hisle was able to complete her vocational rehabilitation internship and actively participate in efforts to find employment. (R. at 14-15). The ALJ relied on the state agency psychologist's report in finding that Hisle's mental impairments did not cause marked limitations in any area of functioning and were not severe. (R. at 15). The ALJ further noted that during her vocational assessment, Hisle was able to stay on task and work independently, and she had no problems being friendly to everyone. *Id.*

Hisle argues that Dr. McIntosh properly considered how Hisle's pain and psychological state would affect her ability to sustain work. She further asserts that Dr. McIntosh's opinion is not inconsistent with that of her treating physician, but was instead based on different evidence, a combination of medical and psychological evidence. The court finds that the ALJ adequately articulated his analysis of the consultative psychologist's opinion. The ALJ provided a reasonable explanation for his determination of the weight to be accorded Dr. McIntosh's report, and that determination is supported by substantial evidence. Such evidence included not only Hisle's own performance in vocational settings, but the opinions of state agency psychologists and Hisle's treating physician. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Hisle also contends that the ALJ committed legal error in assessing her credibility. The ALJ recited the proper criteria to consider when evaluating a claimant's credibility, as set forth in the regulations and Social Security Ruling 96-7p. (R. at 15-16). The applicable criteria include: daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of medication; treatment, other than medication, for relief of pain; and the objective medical evidence and other evidence. The ALJ reviewed Hisle's testimony that she experienced incapacitating symptoms and functional limitations from her combined impairments, but concluded that her allegations were not fully supported by the objective evidence of record, nor by the extent of her daily activities or her treatment history. (R. at 19). The ALJ credited Hisle's reports of pain and functional limitations to some extent in assessing her RFC, but did not find her allegations of pain and other symptoms entirely credible to the extent that they would prevent all work activities. (R. at 20). The ALJ discussed the medical evidence which described her back impairment as moderate or mild. (R. at 19). He noted that clinical testing showed her strength was good, straight leg raising was negative and she had a normal gait. *Id.* Her testimony that she had swelling in her feet was not substantiated by medical records. *Id.* He noted that she lived alone and was able to perform her daily activities, use public transportation, and babysit for a 2 ½ year old child 3-4 times a week. *Id.* She attended job interviews and reported being "very busy" in July 2002. *Id.* Her treatment had been relatively routine and she had no significant side effects from medication. *Id.* Contrary to Hisle's argument, the ALJ did not rely exclusively on the lack of corroborating objective medical records. Rather, he considered her testimony, the

objective evidence, her treatment history and her own activities and vocational training performance.

The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Hisle's allegations that she could not perform basic work activities. The ALJ's discussion relating to Hisle's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

In determining Hisle's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Hisle's age, education, and work history; (2) Hisle's history of diagnoses, treatment, medications, and evaluations; (3) Hisle's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Hisle, a ME, and a VE.

There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. The ALJ discussed the evidence in detail and explained his rationale for accepting and rejecting the various opinions of record. (R. at 13-21). Substantial evidence supports the ALJ's findings of fact and identification and assessment of Hisle's impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning," *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)), and there was substantial evidence to support the ALJ's determination that Hisle was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III. CONCLUSION

There was no reversible error in the assessment of Hisle's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Hisle is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _12/15/2006_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana